May it please the court, Rose Angulo from the Office of the Federal Public Defender on behalf of Barbara McNeice. The California Trial Court admitted into evidence for the purpose of establishing an element of a criminal offense, an autopsy report prepared by a pathologist who was absent from trial despite any showing of unavailability. Because this report is testimonial under Crawford v. Washington, its admission violated Ms. McNeice's Sixth Amendment right to confrontation. You just started off your argument by saying that the trial judge admitted the autopsy report. That's not quite accurate, is it? There were portions of the report. There were excerpts of the report. Yes. There were diagrams. What the judge admitted were diagrams that were attached to the report. Isn't that correct? That's correct. The diagrams were admitted as exhibits. And if you see, I attached a chart to a recent 28J letter that also detailed portions of the report that were essentially read into evidence through Dr. Cohen during his testimony. These were not conclusions that the expert was making himself, but if you look at the text of the autopsy narrative, you'll see that he almost read them verbatim into evidence. And so in that regard, the report itself was right before the jury, through direct examination and through the exhibits. Ms. McNeice, because this is an EPA case, I obviously need to address 2254D, which Ms. McNeice can overcome because the California Court of Appeals decision was both contrary to and an unreasonable application of clearly established federal law as set forth in Crawford v. Washington. Let me ask you a question about that, if I may. When did the trial in this case take place? The trial was in 2004. It took place shortly after the Crawford decision came out. Right. At that time, were a number of federal courts of appeals, even post-Mirandas, still finding that autopsy reports were not testimonial but rather business records prepared for another purpose? Some of those courts were, Your Honor. Well, was there any federal court of appeals at the time that this case was tried that it held that autopsy reports were testimonial in the Crawford sense? To my knowledge, there were not. However, Crawford is a fact-specific inquiry, and the facts of this case are unique and present something different than most other cases. The trial judge noted that in his 28 years on the bench, he had never seen a district attorney try to admit any portions of the autopsy report. So that is one factor that distinguishes this case from other cases. Furthermore, in this case- If I can, I'm sorry for the video interruption. To go back to Judge Perez's question, the district attorney didn't try to admit these. As I recall the record in this case, they were used as charts for arguments, and somehow they went back to the jury, right? He actually, there was a discussion in the- Did the district attorney move the admission? Yes, he did move for the admission. I believe that it was on page 388 of the record, but at the very beginning, before the trial began, the defense attorney made an objection to the admission of the reports. The trial judge said, well, I've never seen this happen. We'll get to it. We'll cross that bridge when we get to it. Indeed, they did get to it, and there was a discussion in the transcripts, and I apologize for not having the exact insight before me. That's okay. I can look at it. Yes, another factor that distinguishes this case from the autopsy reports before other courts is that Barbara McNeese was a known suspect at the time. In the respondent's brief, she notes that often autopsies are a conditions precedent to any prosecution. In this case, Ms. McNeese was the suspect at the time. In fact, the law enforcement officer who discovered the victim's body was present during the autopsy and was actually, if you look at the autopsy narrative, Dr. Montes was taking bullets, evidence from the body, putting them in a bag, and handing them directly to law enforcement. So in this regard, the facts of this case are different from other cases. I also want to look at how the California court ---- Yes, it is fairly standard. You can cross-examine the doctor who performed the autopsy. If the doctor is there, and if the doctor isn't there, then you can bring your own pathologist and have your own pathologist interpret that report. Your Honor, I think that the confrontation clause requires something more. In this case, Ms. McNeese was not able to cross-examine Dr. Cohen. Well, I understand that. That's why we have these rules like the official records rule or the business records rule. As a matter of fact, if you look at the definition of those exceptions, they're not even considered to be hearsay. Yes, and I think this goes to one of the reasons that the California court of appeals was unreasonable. Crawford made clear that the relationship between the business record hearsay inquiry and the testimonial inquiry under Crawford was not an either-or proposition, but rather an and-or, meaning that just because something might be considered a business record does not preclude it from also being testimonial. The California court stopped its inquiry at the state law evidentiary finding. In doing so, it implicated the concern that Crawford expressed against leaving the confrontation clause protection to the vagaries of evidence law. The California court also looked to the report's reliability as a reason for its admission. Again, Crawford made clear that reliability can only be tested in the crucible of cross-examination. In this case, Dr. Cohen admitted on the stand that he was not able to determine from the pictures and diagrams alone whether the victim's body was in motion at the time that it was shot. The only disputed element at trial was Ms. McNeese's intent in shooting the victim. She admitted to doing so. The prosecution used the contents of the autopsy report, specifically the trajectory of the bullets through the body, to argue that the victim was sleeping and couldn't have been moving. Dr. Cohen again admitted that he could not tell certain things just from the diagrams. Ms. McNeese was also unable to test the credibility of Dr. Montes in front of the jury. She wasn't able to ask him whether the diagrams and photographs accurately reflected what he saw. She wasn't able to question whether he made mistakes in other cases. She wasn't able to ask him if anything unusual happened during this autopsy. So I still don't understand. You know, I read your brief, and I went back and looked at Crawford and thought about this. I still don't understand. You need to clarify for me what it is about those diagrams that are testimony within the meaning of Crawford. The diagrams show that you're right. Because Crawford doesn't give us a definition of testimony. Well, Crawford does that. It just gives us some examples. Crawford does that for. Testimony at a preliminary hearing, interviews by the cops at the police station. Yes. Crawford doesn't. I think there are a couple of other matters that they identified. So why are those exhibits, the diagrams, testimonial? Okay. Well, I would like to note that Crawford, while it gives examples of testimonial, it also does defer to the basic dictionary definition that testimonial is a solemn declaration or affirmation made for the purpose of establishing some fact. And I think the autopsy report falls into that. The diagrams show that. I'm not talking about the narrative portion of the autopsy report, which was not admitted into evidence. I'm asking you about the diagrams that were admitted into the exhibit. The diagrams show entrance rooms and exit rooms, and they also have arrows, which show the trajectory of the bullets. In closing arguments, the prosecution argued that that very trajectory, if you relied on the fact that that entrance room was accurate and that the exit room was accurate and that the direction notated on the diagram was accurate to argue. If the diagrams had been photographs, would you be contending that they were testimonial? If the diagrams had been photographs, I think, yes. If instead of drawing a diagram, the coroner simply had taken a picture and, as they sometimes do, put pencils or other markers in the body to show the trajectory of the bullets, would you be contending that those photographs were testimonial? The photographs would likely also be testimonial in the sense that we need to know whether those photographs accurately reflected everything that was visible to the coroner at the time of the autopsy report. Okay. That doesn't make it testimonial. That's just a foundational question. My question is, would the photograph itself, as you had just asked with respect to the exhibit, would that piece of paper or that physical object be testimonial? If it was just a picture of the entrance wound or exit wound, then it likely would not be testimonial. I think when you get into the interpretation, which is, again, the trajectory of the bullets, which depends on the coroner's interpretation of what is an entrance wound, what is an exit wound, and what organs were perforated, then you have a lot more room for human error, a lot more room for conclusions that are open to dispute. And so for that reason, I think the diagrams are definitely more testimonial than the photographs would be. So going back to Judge Hurwitz's question at the outset, which was, looking at Crawford at the time of this trial, was it clearly established by the Supreme Court that autopsy reports like this or the excerpts, the diagrams, do not qualify as we're not covered by the testimonial portion of Crawford when there are no other circuit at that time? Crawford did not specifically mention that. But he suggested that. Crawford did not specifically mention autopsy reports. However, under AEDPA, general rules of law may still be sufficiently clear for established and clearly established federal law. Crawford made it clear that it overruled Ohio v. Roberts, and it was no longer okay just to look at whether something fell under a hearsay exception. So you think the Second Circuit in 2006 and the First Circuit in 2008 were just wrong in holding post-Crawford, and in one case, I think post-Melendez, that autopsy reports were not testimonial? Well, I think that Crawford requires a fact-specific inquiry. When there is a suspect who is known, and when the duty of the coroner arises out of a suspected homicide, I think that they are testimonial. In those cases, I believe that the suspects were unknown at the time, and in all of those cases, no portions of the autopsies were admitted into evidence. In this case, the prosecutor used the contents of the diagram as well as the autopsy narrative for the truth of the matter asserted. I also think in looking to whether or not the California court was unreasonable, you need to consider the fact that it erroneously treated the relationship between the business record and the hearsay inquiry and the testimonial inquiry as being one of the same. Crawford did clearly establish that those were different inquiries. All right. Thank you. Thank you. Good morning, Your Honors. Deputy Attorney General Jennifer Jadovitz for Respondent. Based on the court's inquiries and Ms. Angulo's report, it remains Respondent's position in this case that in applying Crawford at the time, the Court of Appeals' decision in rejecting the Confrontation Clause claim was not unreasonable. As the district court noted in its report and recommendation, there is nothing in Crawford that establishes that, or even suggests for that matter, that admission of the autopsy report or Dr. Cohen's testimony was unreasonable. And none of that evidence would have been testimony and violated the Confrontation Clause. So the question is what if they had admitted the full autopsy report? Well, fortunately the narrative portion. They didn't in this case. Right. My question is what if they did? That would be a harder question, wouldn't it? It would be a harder question, and then we'd have to compare perhaps the possible admission to that then to what Dr. Cohen might have testified to at that point. So without knowing what he would have said in relation to the actual narrative portion, that question is a little harder to answer at this point. With respect to the diagrams of themselves, Respondent respectfully disagrees. They're simply not testimonial in this situation. And with respect to the Court of Appeal, Respondent would submit that the Court of Appeal did consider the Crawford issue. If the Court would note at, I believe, it would be page 48 in the Appellant's Excerpts of Record where the Court of Appeal opinion appears. They did consider other case law that did consider the admission of autopsy reports under Crawford. So that notably would be the Court of Appeal's consideration of the issue and Crawford specifically. So once again at this point, it would be Respondent's position that the Court of Appeal's decision in finding that there was no confrontation clause violation in this circumstance was not unreasonable and that at the time that the Court of Appeal decided this issue, that no fair-minded jurist applying Crawford could disagree. So unless the Court has any further questions at this time, Respondent would be willing to submit. Now, what is the general rule in the Court of Appeal that follows on determining whether to do an autopsy report, do an autopsy report on it? I think any time when the... What? I believe that would be any time the death would be, you know, there's a questionable death in this case. Is there a statute that governs this? Does California law require an autopsy report when a death occurs under unclear circumstances? Yes. So the coroner doesn't make a decision on his own. The coroner routinely does autopsies when somebody dies under circumstances that are difficult to determine. Exactly. In order to determine what the circumstances of those deaths are for a myriad of reasons, whether it be a homicide, whether it be for the family to determine whether it was a wrongful death or otherwise. So there's a myriad of purposes for which an autopsy is conducted, and that's why that, you know, as the district court noted, the autopsy report is a business record, therefore it's non-testimonial. Therefore, its admission or co-testimony does not violate the Confrontation Clause. All right. If there's any further questions, we would submit. Thank you. Any rebuttal? Crawford clearly explained that it had a concern with the involvement of government officers in the production of testimony with an eye towards trial and noted that presents unique potential for prosecutorial abuse. In this case, Dr. Montes knew at the time that he was conducting the autopsy that the reports and diagrams he produced would be used against Barbara McNeese. For that reason, I would submit that Crawford makes clear the report was testimonial. Thank you. Well, if there's a murder or suspicion of a murder or someone passes away or dies under suspicious circumstances, autopsies are routinely conducted. Yes, they are routinely conducted, but the fact that they might be conducted as a matter of routine does not mean that it cannot also be testimonial when there might be incentives to, for example, corroborate the law enforcement. No, there's always an element of that in there. It's a business record, and it's considered necessary. And if there are challenges to it, there's no problem in a party bringing its own expert in. And looking at the entrance and exit of the missile that went through this person's body. Your Honor, I think that goes to the difference between the Confrontation Clause and the Compulsory Clause. Because the prosecution chose to use this document to establish an element of the crime, they were required to bring their own witness in for confrontation. It is true that a defendant can choose to bring in certain witnesses, but to the extent that the prosecution chose to rely on these reports to establish an element, prosecution was required under the Confrontation Clause to produce the witness themselves. All right. Fine. This matters.
judges: Pregerson, Paez, Hurwitz